IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH SMITH, | * |
| Plaintiff, | * |
| vs. | * Civil Action No. 07-00485 (ESH) |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | * |
| | * |
| Defendant. | |

## MOTION FOR JUDGMENT OF REVERSAL

Comes now the Plaintiff, Joseph Smith, by and through his attorney, Stephen F. Shea, Esquire, and moves this Honorable Court for a judgment of reversal against the Defendant, Michael J. Astrue, Commissioner of Social Security, on the ground that the Defendant's final administrative decision fails to be supported by substantial evidence, and is erroneous as a matter of law.

Alternatively, the Plaintiff moves pursuant to 42 U.S.C. §405(g) to have this matter remanded to the Social Security Administration for a new administrative hearing.

In support of this Motion, the Plaintiff relies upon the accompanying Memorandum.

Respectfully submitted,

BY:_____/s/Stephen F. Shea_____
        Stephen F. Shea
        801 Roeder Road, Suite 550
        Silver Spring, MD 20910
        (301) 495-6665
        Bar No. 418423

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH SMITH, | * |
| Plaintiff, | * |
| vs. | * Civil Action No. 07-00485 (ESH) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | * |
| | * |
| Defendant. | |

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
JUDGMENT OF REVERSAL

I. INTRODUCTION.

The Plaintiff, Joseph Smith, filed this action seeking judicial review of the Defendant's final administrative decision denying his claims for Disability Insurance Benefits and Supplemental Security Income Benefits.

The Plaintiff moves this Court for Judgment of Reversal. The final administrative decision of the Defendant fails to be supported by substantial evidence, and is erroneous as a matter of law. The Plaintiff is entitled to judgment as a matter of law.

Alternatively, the Plaintiff moves this Court for an Order pursuant to 42 U.S.C. Section 405(g), remanding this case to the Social Security Administration for a new administrative hearing. This Memorandum is in support of this combined Motion.

II. PROCEDURAL BACKGROUND.

Joseph Smith filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits pursuant to Titles II and XVI of the Social Security Act on October 18, 2004, and alleged disability, commencing March 6, 2004, on the basis of low back pain. (Tr. 17, 50-52, 62). The Plaintiff's claims were denied initially and upon reconsideration. (Tr. 29-33, 34, 36-39, 250-254,

256-258).

Thereafter, the Plaintiff requested a hearing before an Administrative Law Judge. (Tr. 40). The hearing was held on May 1, 2006, and the Plaintiff was again denied benefits by decision dated June 22, 2006. (Tr. 14-24). Thereafter, on August 7, 2006, the Plaintiff requested that the Appeals Council review the decision of the Administrative Law Judge. (Tr. 11-13). On December 22, 2006, the Appeals Council affirmed the decision of the Administrative Law Judge. (Tr. 6-10). The Plaintiff has thus fully and completely exhausted his administrative remedies.

III. FACTUAL BACKGROUND.

Joseph Smith is a 49 year-old man who is a resident of Washington, DC. His alleged onset date of disability is March 6, 2004. (Tr. 17, 50-52, 62, 262). He has a high school education, and no additional training. (Tr. 68, 262). His past-relevant work includes work as a dishwasher, inserter, driver helper, floor waxer, and laborer. (Tr. 63, 72, 262-263). He has no transferable skills from any of his past-relevant work. (Tr. 272-273). In order to be eligible for benefits, the Plaintiff must establish that he was disabled on or before December 31, 2008. (Tr. 55).

The Plaintiff has a long history of back injuries, having injured his back in January, 1993, June, 1998, and December, 2003. He has been diagnosed with spondylosis with lumbar radiculopathy, with symptom in his left leg and hip. He has attempted physical therapy, as well as epidural blocks, with no relief of his chronic pain. His treating neurologist has limited him to sitting, standing, and walking for less than two hours per day each, and to lifting no more than 10 pounds. (Tr. 184-185). In addition, his primary care physician has indicated that the Plaintiff's abilites to walk, stand, stoop, kneel, lift, reach, push, and pull are all limited. (Tr. 194).

IV. ADMINISTRATIVE DECISION.

The Administrative Law Judge, in a decision dated June 22, 2006, found that the Plaintiff was not disabled within the meaning of the Social Security Act. He based this decision on his belief

that although the Plaintiff's back disorder was a severe impairment, he nevertheless possessed the residual functional capacity to perform the exertional demands of light work, with a preclusion from work requiring the climbing of ladders, ropes, and scaffolds, work around hazardous moving machinery and hazardous heights, and requiring concentrated exposure to excessive vibration. The Plaintiff was further precluded from lower extremity use of push/pull controls, and above shoulder lifting and carrying. In addition, he was able to perform postural movements occasionally, with the exception of a preclusion as to kneeling and crawling, and was limited to low stress routine work. (Tr. 20). Further, the Plaintiff had moderate limitations performing activities within a schedule, maintaining regular attendance for reliability purposes, being punctual within customary tolerances, and completing a normal workday or workweek without an unreasonable number and length of rest periods. The Plaintiff was limited to standing and walking for four hours in an eight-hour day, and sitting six hours in an eight-hour day. Finally, the Administrative Law Judge determined that the Plaintiff was not credible. He concluded, based upon vocational expert testimony at step five of the sequential evaluation process, that the Plaintiff was capable of performing other work which exists in significant numbers in the national economy. (Tr. 14-24).

The Administrative Law Judge, in a decision dated March 31, 2005, found that the Plaintiff was not disabled within the meaning of the Social Security Act. He based his findings on his belief that although the Plaintiff's right knee osteoarthritis, carpal tunnel syndrome, recurrent pulmonary embolism, and depression were severe, the Plaintiff nevertheless possessed the residual functional capacity to perform the exertional demands of a significant range of light work, with occasional pushing or pulling, occasional balancing, stooping, crouching and climbing, the need to avoid crawling and ladder climbing, the ability to occasionally handle, grab, or grasp large and small objects with the right hand, and an unlimited ability to use the left hand. He was further limited to work which does not involve constant interaction with the public, coworkers, or supervisors, and

which does not require complex multi-tasking or substantial production quotas. In addition, he determined that the Plaintiff was not credible. He concluded, at step five of the sequential evaluation process, that the Plaintiff was capable of working as an information clerk and order clerk. (Tr. 12-23).

VI. <u>ARGUMENT</u>.

    A.    THE ADMINISTRATIVE LAW JUDGE ERRONEOUSLY ASSESSED THE PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY.

As part of the sequential evaluation process, the Administrative Law Judge is required to make a determination of the claimant's residual functional capacity. "Residual functional capacity" is defined by Social Security Ruling 96-8p:

> Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

The Administrative Law Judge failed to properly assess the Plaintiff's limitations as required pursuant to Social Security Ruling 96-8p. This Ruling provides, in part:

> <u>The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities.</u> At step 4 of the sequential evaluation process, the RFC must not be expressed initially in terms of the exertional categories of "sedentary," "light," "medium," "heavy," and "very heavy" work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it.
>
> RFC may be expressed in terms of an exertional category, such as light, if it becomes necessary to assess whether an individual is able to do his or her past relevant work as it is generally performed in the national economy. However, without the initial function- by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work as it is generally performed in the national economy because particular occupations may not require all of the exertional and nonexertional demands necessary to do the full range of work at a given exertional level.
>
> <u>At step 5 of the sequential evaluation process</u>, RFC must be expressed in terms of, or related to, the exertional categories when the adjudicator determines whether there

4

> is other work the individual can do. However, in order for an individual to do a full range of work at a given exertional level, such as sedentary, the individual must be able to perform substantially all of the exertional and nonexertional functions required in work at that level. <u>Therefore, it is necessary to assess the individual's capacity to perform **each of these functions** in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level</u>.
>
> \*   \*   \*   \*   \*
>
> NARRATIVE DISCUSSION REQUIREMENTS
>
> **The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) (FN7), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.**

(Emphasis added). In <u>Butler v. Barnhart</u>, 353 F.3d 992, 1000 (D.C. Cir. 2004), the Court stated:

> The ALJ's RFC assessment bears on Butler's ability to perform past relevant work (step four) and her ability to do "other work" (step five). 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f); id. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii). It is designed to determine the claimant's uppermost ability to perform regular and continuous work-related physical and mental activities in a work environment. Id. §§ 404.1545(a)(1), 416.945(a)(1); see also Social Security Ruling (SSR) 96- 8p, Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at \*2-\*3 (SSA July 2, 1996). **In effect, it is a "function-by-function" inquiry based on all of the relevant evidence of a claimant's ability to do work and must contain a "narrative discussion" identifying the evidence that supports each conclusion**. SSR 96-8p, 1996 WL 374184, at \*3, \*7; see 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In performing the RFC assessment, the ALJ must explain how he considered and resolved any "material inconsistencies or ambiguities" evident in the record, as well as the reasons for rejecting medical opinions in conflict with the ultimate RFC determination. SSR 96-8p, 1996 WL 374184, at \*7.

Social Security Ruling 96-8p also provides:

> **The RFC assessment must** first identify the individual's functional limitations or restrictions and **assess his or her work-related abilities** on a function-by-function basis, **including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545**

5

>and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

(Emphasis added). Significantly, 20 C.F.R. 404.1545(b) (2003) provides:

>Physical abilities. When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

Thus, the Administrative Law Judge is required to perform a function-by-function assessment of a claimant's ability to perform the physical demands of work, including, sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping and crouching.

Here, the Administrative Law Judge failed to perform a proper residual functional capacity assessment in several respects.

First, a review of the administrative decision reveals that while the Administrative Law Judge did set forth a residual functional capacity assessment, he failed to set forth a narrative discussion describing how the evidence supported each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations), as required. In Lane-Rauth v. Apfel, 437 F.Supp.2d 63, 67-68 (D.D.C. 2006) this Court stated:

>The defendant contends that the ALJ followed SSR 96-8p when he determined that the plaintiff was "precluded from using her upper left extremity, could lift no more than four pounds with her dominant right upper extremity, and would require a sit/stand option." Def.'s Mot. at 9; Admin. R. at 21. To the contrary, the ALJ's ruling spends three pages simply listing the plaintiff's entire medical history and then conclusively stating that "based on the evidence, including the testimony at the hearing, the Administrative Law Judge finds that claimant retains the residual functional capacity to perform sedentary work." Admin. R. 19-21. The law requires that he do more-that the "ALJ build an 'accurate and logical bridge from the evidence to [his] conclusion' so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir.2002) (quoting Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir.2002)). Because the ALJ simply listed all of the evidence without clearly explaining which particular pieces of evidence led him to his

>  conclusion, there is no "logical bridge," id., and no "thorough discussion and analysis," SSR 96-8p.

Here, as in <u>Lane-Rauth</u>, <u>supra</u>, the Administrative Law Judge failed to supply the logical bridge between the evidence he relied upon and his conclusions. This residual functional capacity assessment is completely devoid of analysis, and it is impossible to determine what evidence the Administrative Law Judge relied upon in reaching his conclusions. For example, the Administrative Law Judge provided no rationale to support his determination that the Plaintiff :

> Can lift 10 pounds frequently and 20 pounds occasionally;
>
> Cannot climb ladders ropes or scaffolds;
>
> Cannot kneel or crawl;
>
> Can perform other postural activities occasionally;
>
> Cannot perform above-shoulder lifting and carrying;
>
> Cannot use push pull controls with the lower extremities;
>
> Is precluded from concentrated exposure to excessive vibration;
>
> Cannot be exposed to extreme temperature changes, hazardous heights, and hazardous machinery;
>
> Has moderate limitations as to the ability to perform activities within a schedule, maintain regular attendance, or be punctual within customary tolerances;
>
> Has moderate limitations as to completing a normal work day or work week without an unreasonable number and length of rest periods;
>
> Can walk or stand four hours in an eight hour day;
>
> Can sit six hours of an eight hour day.

A review of the administrative decision reveals that the Administrative Law Judge has failed to provide any rationale to support these conclusions. Consequently, as the Administrative Law Judge has failed to set forth a "narrative discussion" identifying the evidence that supports each conclusion, citing specific medical facts and nonmedical evidence, his residual functional capcity assessment

7

defies review.

Second, the Administrative Law Judge ignored pertinent evidence in assessing the Plaintiff's residual functional capacity. The record reflects that the Plaintiff's treating neurologist, Dr. Gary Dennis, determined that the Plaintiff was limited sitting less than 2 hours, standing less than 2 hours, walking less than 2 hours, and lifting up to ten pounds. (Tr. 185). In addition, Dr. Dennis found that the Plaintiff had restricted range of motion of his back which worsened with sitting or standing 15 to 30 minutes. (Tr. 184).The Administrative Law Judge failed to mention these opinions, instead determining that Dr. Dennis's opinion that the Plaintiff was "100 percent permanently disabled" was entitled to no weight. (Tr. 21).

In addition, the Plaintiff's primary care physician, Dr. Marcus Wallace, reported that the Plaintiff's condition was slowly progressive, and that the Plaintiff was limited in his abilites to walk, stand, stoop, kneel, lift, reach, push, and pull. (Tr. 190,194). As with the opinions of Dr. Dennis, the Administrative Law Judge failed to mention these opinions, and never evaluated them in assessing the Plaintiff's residual functional capacity assessment.

Third, the Administrative Law Judge failed to provide any explanation for rhis implicit rejection of the opinions of Dr. Dennis and Dr. Wallace. In See v. Washington Metropolitan Transit Authority, 36 F.3d 375, 384 (4th Cir.1994), the Court stated:

> An ALJ's decision is statutorily required to include a discussion of "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record." 5 U.S.C. § 557(c)(3)(A) (1988) Strict adherence to this statutorily-imposed obligation is "critical to the appellate review process.... The courts have respected this requirement [in § 5579(c)(3)(A)] by remanding cases where the reasoning for the a.l.j's [sic] conclusion is lacking and therefore presents inadequate information to accommodate a thorough review." Director, OWCP v. Congleton, 743 F.2d 428, 429 (6th Cir.1984). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, ... an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir.1981). This court has long required specific references to the evidence supporting an ALJ's

8

> decision as part of the ALJ's "duty of explanation." Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir.1985); see also King v. Califano, 615 F.2d 1018, 1020 (4th Cir.1980). Conversely, when faced with evidence in the record contradicting his conclusion, an ALJ must affirmatively reject that contradictory evidence and explain his rationale for so doing. CNA Ins. Co. v. Legrow, 935 F.2d 430, 436 (1st Cir.1991); Smith v. Heckler, 782 F.2d 1176, 1181 (4th Cir.1986); see also Congleton, 743 F.2d at 430 ("[A]n a.l.j.'s [sic] conclusory opinion, which does not encompass a discussion of the evidence contrary to his findings, does not warrant affirmance."); Cotter, 642 F.2d at 706 ("[T]here is a particularly acute need for some explanation by the ALJ when s/he has rejected relevant evidence or when there is conflicting probative evidence in the record.")

Here, as set forth above, despite the existence of evidence which conflicted with his residual functional capacity assessment, the Administrative Law Judge failed to provide any explanation for rejecting evidence from the Plaintiff's treating physicians. As a result, it is impossible to determine whether these opinions were properly rejected, or simply ignored. Consequently, the residual functional capacity assessment defies review, and must be reversed.

Fourth and finally, as set forth above, the Administrative Law Judge rejected those opinions of Dr. Dennis which he chose to address, and ignored the opinions of Dr. Wallace completely. Further, he determined that the opinions of the State Agency physicians were grounded in the evidence in the case, and consequently, to the extent that these opinions were consistent with the evidence of record, they were "persuasive to the extent of the residual functional capacity determined." (Tr. 20). Significantly, the State Agency physicians found that the Plaintiff was limited to lifting 20 pounds occasionally and 10 pounds frequently, was capable of performing all postural movements occasionally, including climbing ladders, ropes, and scaffolds, and kneeling and crawling, and had no other limitations. (Tr. 145-152). The residual functional capacity assessment, as set forth by the Administrative Law Judge, is thus without medical basis, as it is not supported by the State Agency physician, or either of the Plaintiff's treating physicians.

As the Administrative Law Judge failed to set forth a narrative discussion, failed to

adequately explain his rationale, and failed to address pertinent evidence, his residual functional capacity assessment fails to be supported by substantial evidence, is erroneous as a matter of law, and must be reversed.

>   B.   THE ADMINISTRATIVE LAW JUDGE ERRONEOUSLY EVALUATED THE PLAINTIFF'S SUBJECTIVE COMPLAINTS

The Administrative Law Judge failed to properly assess the Plaintiff's subjective complaints. In Butler v. Barnhart, 353 F.3d 992, 1004-1005 (D.C. Cir. 2004), the Court of Appeals for the District of Columbia Circuit addressed the proper approach to be applied when evaluating subjective complaints. The Court stated:

> The applicable regulations prescribe a two-step process to determine whether a claimant suffers from symptoms (including pain) that affect her ability to perform basic work activities. 20 C.F.R. §§ 404.1529, 416.929. First, the claimant must adduce "medical signs or laboratory" findings evidencing a "medically determinable impairment that could reasonably be expected to produce" the alleged pain. Id. §§ 404.1529(a)-(b), 416.929(a)-(b); see also 42 U.S.C. §§ 423(a)(5)(A), 1382(H)(i). The objective evidence must confirm the existence of an impairment "reasonably expected to produce," 20 C.F.R. §§ 404.1529(b), 416.929(b), "the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 594. Once the claimant crosses this threshold, the second step assesses the persistence and intensity of the claimant's pain as well as the extent to which it impairs her ability to work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).
>
> The latter evaluation entails not only the claimant's statements about her pain but also "all the available evidence," including the claimant's medical history, medical signs and laboratory findings; objective medical evidence of pain; the medical opinions of the claimant's treating physician; and any other evidence that bears on the severity of the pain. Id. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); Craig, 76 F.3d at 594-95. As to other evidence bearing on the severity of pain, the regulations provide that because pain is "subjective and difficult to quantify," the Commissioner takes account of "any symptom-related functional limitations and restrictions" reported by the claimant and her treating physician "which can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Factors the Commissioner considers as relevant to assessing a claimant's pain are: the claimant's daily activities; the "location, duration, frequency, and intensity of" the claimant's pain; "precipitating and aggravating factors"; "the type, dosage, effectiveness, and side effects of any medication" for pain relief; treatment the claimant receives or has received, other than medication, for pain relief; "any measures" the claimant uses to relieve pain; and "other factors concerning [the claimant's] functional limitations and restrictions

10

> due to pain." Id. §§ 404.1529(c)(3)(i)(vii), 416.929(c)(3)(i)-(vii).
>
> In considering the extent to which the claimant's pain interferes with her capacity to engage in basic work activities, the regulations provide that the ALJ evaluates the claimant's "statement in relation to the objective medical evidence and other evidence," id. §§ 404.1529(c)(4), 416.929(c)(4), including "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your medical history, the medical signs and laboratory findings, and statements by your treating or examining physician or psychologist or other persons *1005 about how your symptoms affect you." Id. And a claimant's allegations of pain will be "determined to diminish [her] capacity for basic work activities" only insofar as her "alleged functional limitations and restrictions due to ... pain ... can reasonably be accepted as consistent with the objective medical evidence and other evidence." Id.
>
> Social Security Ruling 96-7p supplies further guidance to the ALJ on how to evaluate pain. Once an underlying impairment that could reasonably be expected to generate the alleged pain has been established, the intensity, persistence and limiting effects of the pain must be evaluated "to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 96-7p, Evaluation of Symptoms in Disability Claims: Assessing the Credibility of An Individual's Statements, 1996 WL 374186, at *1 (SSA July 2, 1996). This determination in turn requires "the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects." Id. In determining the individual's credibility, the ALJ "must consider the entire case record" and may not disregard the individual's statements about the intensity and persistence of her pain "solely because they are not substantiated by objective medical evidence." Id. The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." Id. at *2.. . . [s]ubjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant.

(Emphasis added). Here, the Administrative Law Judge failed to follow this standard. The Administrative Law Judge stated:

> Upon reviewing the evidence as a whole, the Administrative Law Judge finds that the Claimant is credible with regard to the presence of some degree of discomfort and his inability to do some types of work. The Administrative Law Judge also finds that the Claimant is not credible with regard to his allegations that he is unable to perform any type of work and has been from the date of onset.

(Tr. 21). The Administrative Law Judge made no determination of whether the Plaintiff had

11

established, by objective medical evidence, an impairment capable of causing the type and degree of subjective complaints alleged. This analysis was completely omitted from the Administrative Law Judge's decision. This omission is significant, in that the Plaintiff's primary complaint was chronic low back pain.

Similarly, although the Administrative Law Judge determined that the Plaintiff was not credible, (Tr. 21), he failed to perform a proper assessment of the Plaintiff's credibility. The Administrative Law Judge specifically found that the Plaintiff was not credible, but never identified the statements which he found to be credible or the statements which were not credible. In addition, he did not directly address the Plaintiff's subjective complaints in his credibility analysis. Finally, he failed to consider the factors set forth in S.S.R. 96-7p for the evaluation of subjective complaints, including, the Plaintiff's daily activities; the location, duration, frequency, and intensity of the Plaintiff's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the Plaintiff takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the Plaintiff receives or has received for relief of pain or other symptoms; any measures other than treatment the Plaintiff uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and any other factors concerning the Plaintiff's functional limitations and restrictions due to pain or other symptoms. Consequently, the Administrative Law Judge has failed in his duty of explanation, and his decision defies review. As a result, the Administrative Law Judge's credibility determination is erroneous as a matter of law, is not supported by the record as a whole, and must be reversed.

    C.    THE ADMINISTRATIVE LAW JUDGE FAILED TO PROPERLY DEVELOP THE ADMINISTRATIVE RECORD.

In <u>Poulin v. Bowen</u>, 817 F.2d 865, 872-873 (1987), the Court stated:

> The administrative law judge also neglected his duty in several other areas. Standing alone, these would not necessarily mandate remand; in combination, they cast serious doubt on the fairness of the hearing afforded claimant. (FN65) **First, the judge failed "to obtain or admit into evidence relevant and probative medical records." (FN66) The record contains references to additional medical records that bear on appellant's disability. (FN67) By neglecting to obtain these records, the administrative law judge slighted his "duty to 'scrupulously and conscientiously probe into, inquire of, and explore for the relevant facts**.' " (FN68) This failure is exacerbated by the fact that the judge in part discounted the medical reports of Poulin's treating physicians as "unsupported by sufficient adequate underlying findings." (FN69) As we observed in <u>Narrol v. Heckler</u> in rejecting an administrative law judge's criticism of a treating doctor's report because "[t]here are no objective medical findings to substantiate the diagnosis, ... [i]f the ALJ required further evidence ... he could have informed [appellant] of the need to submit further documentation." (FN70)

(Emphasis added). The Administrative Law Judge thus had a duty to adequately develop the administrative record. The Administrative Law Judge failed in this duty, in several respects.

First, the Administrative Law Judge failed to develop the administrative record in that he failed to obtain pertinent medical records. The Plaintiff indicated in June, 2005, that he was being treated by Dr. Osei at Howard University Hospital. (Tr. 100). Despite this evidence, no attempt was made by the Administrative Law Judge to obtain the records of this treating physician, or to advise the Plaintiff that they were necessary.

Second, the Administrative Law Judge failed to develop the administrative record in that he failed to recontact the Plaintiff's treating neurologist, Dr. Dennis, for additional evidence. Volume 20 C.F.R. §404.1512(e) (2007) provides:

> Recontacting medical sources. **When the evidence we receive** from your treating physician or psychologist or other medical source **is inadequate for us to determine whether you are disabled**, we will need additional information to reach a determination or a decision. To obtain the information, **we will take the following actions.**
>
> (1) **We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available**. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or

13

> **ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques**. **We may do this by requesting copies of your medical source's records, a new report, or a more detailed report** from your medical source, including your treating source, or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.
>
> (2) We may not seek additional evidence or clarification from a medical source when we know from past experience that the source either cannot or will not provide the necessary findings.

(Emphasis added). Here, the Administrative Law Judge specifically determined that the opinion of Dr. Dennis was contrary to the evidence as a whole. (Tr. 21). Based upon this finding, Dr. Dennis's opinion was inadequate for the Administrative Law Judge to determine whether the Plaintiff was disabled. In addition, based upon the Administrative Law Judge's own findings, Dr. Dennis's reports contained a conflict or ambiguity which needed to be resolved. Consequently, the Administrative Law Judge had a duty to recontact the Plaintiff's treating physician to obtain a new report, copies of records, or a more detailed report. Having failed to even attempt to obtain this information, the Administrative Law Judge failed to adequately develop the administrative record, as required.

Third, the Administrative Law Judge failed to develop the administrative record in that he failed to order a consultative examination to evaluate the Plaintiff's. 20 C.F.R. §404.1512(f) (2007) provides:

> Need for consultative examination. If the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense. See §§ 404.1517 through 404.1519t for the rules governing the consultative examination process. Generally, we will not request a consultative examination until we have made every reasonable effort to obtain evidence from your own medical sources. However, in some instances, such as when a source is known to be unable to provide certain tests or procedures or is known to be nonproductive or uncooperative, we may order a consultative examination while awaiting receipt of medical source evidence. We will not evaluate this evidence until we have made every reasonable effort to obtain evidence from your medical sources.

20 C.F.R.§404.1519a (2007) provides:

14

> (a)(1) General. **The decision to purchase a consultative examination for you will be made after we have given full consideration to whether the additional information needed (e.g., clinical findings, laboratory tests, diagnosis, and prognosis) is readily available from the records of your medical sources**. See Section 404.1512 for the procedures we will follow to obtain evidence from your medical sources. Before purchasing a consultative examination, we will consider not only existing medical reports, but also the disability interview form containing your allegations as well as other pertinent evidence in your file.
>
> (2) When we purchase a consultative examination, we will use the report from the consultative examination to try to resolve a conflict or ambiguity if one exists. We will also use a consultative examination to secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision.
>
> (b) **Situations requiring a consultative examination**. A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim. **Other situations, including but not limited to the situations listed below, will normally require a consultative examination:**
>
> **(1) The additional evidence needed is not contained in the records of your medical sources;**
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
>
> (4) **A conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical source; or**
>
> (5) **There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.**

(Emphasis added). Here, the Plaintiff meets several of these requirements. First, the Administrative Law Judge obviously felt that the evidence regarding the Plaintiff's back impairment was insufficient. Second, the additional evidence of the Plaintiff's back impairment was not sought from the Plaintiff's medical sources. Third, there was an obvious conflict between the findings of the

15

Administrative Law Judge, the Plaintiff's complaints, and the opinions of Dr. Dennis. Finally, as set forth above, the Administrative Law Judge's residual functional capacity assessment was without medical basis. As a consequence, a consultative examination was required to evaluate the restrictions related to the Plaintiff's back condition.

> In <u>Dozier v. Heckler</u>, 754 F.2d 274, 276 (8th Cir. 1985), the Court stated:
>
> In addition, "[i]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." <u>Reeves v. Heckler</u>, 734 F.2d 519, 522 n. 1 (11th Cir.1984). The current regulations provide that if a claimant's "medical sources cannot give ... sufficient medical evidence about an impairment ... to determine whether" the claimant is disabled, the Secretary may order a consultative examination. 20 C.F.R. § 416.917. [FN1]  In this case, appellant argues, and we agree, that the ALJ erred by failing to order consultative examinations. We believe that a neurological evaluation of appellant's headaches is necessary. In addition, we believe a psychiatric or psychological and an orthopedic examination are necessary in order to properly evaluate appellant's anxiety and back and toe impairments, and to determine whether her complaints of pain are psychological in origin. See <u>Ford v. Secretary of Health and Human Services</u>, 659 F.2d 66, 69 (5th Cir.1981) (consultative psychiatric examination necessary where claimant testified to crying spells and nervousness and social worker noted emotional instability).

Here, a consultative examination was necessary to determine the severity of the Plaintiff's back condition. Without such additional evidence, it was impossible for the Administrative Law Judge to make an informed decision regarding whether the Plaintiff was disabled. See also, <u>Hawkins v. Chater</u>, 113 F.3d 1162 (10th Cir. 1997). By failing to order a consultative examination, as mandated by the Regulations, the Administrative Law Judge has failed in his duty to develop the administrative record, and deprived the Plaintiff of the opportunity to adequately present his case. As a consequence, the final administrative decision of the Defendant fails to be supported by substantial evidence, and must be reversed.

VI..  <u>CONCLUSION</u>.

As set forth above, in denying Disability Insurance Benefits and Supplemental Security Income Benefits to the Plaintiff, the Administrative Law Judge erred in several respects. First, he

failed to properly assess the Plaintiff's residual functional capacity. Second, he erroneously evaluated the Plaintiff's subjective complaints. Third, he failed to properly develop the administrative record. As a result, the decision of the Defendant fails to be supported by substantial evidence, and should be reversed.

      Respectfully submitted,


    BY:_____/s/Stephen F. Shea_____
      Stephen F. Shea
      801 Roeder Road, Suite 550
      Silver Spring, MD 20910
      (301) 495-6665
      Bar No. 418423