UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH E. SMITH, | ) |
|     Plaintiff, | ) |
| vs. | ) Civil Action No. 07-0485 ESH |
| MICHAEL J. ASTRUE<br>Commissioner of Social Security, | ) |
|     Defendant. | ) |

### DEFENDANT'S MOTION FOR JUDGMENT OF AFFIRMANCE

Defendant Michael J. Astrue, Commissioner, Social Security Administration ("Commissioner"), for the reasons more fully set forth in the accompanying memorandum of points and authorities, moves the Court for an order affirming the decision of the Commissioner denying plaintiff disability benefits under both Title II of the Social Security Act (the Act) and under Title XVI (supplemental security benefits) of the Act. In compliance with LCvR 7.1 (c), a proposed order is attached hereto.

As our Court of Appeals explained in Igonia v. Califano, 568 F.2d 1383, 1389 (D.C. Cir. 1977), the Social Security Act directs the District Court to enter its judgment upon the pleadings and the transcript of the record, 42 U.S.C. § 405(g), and the use of the summary judgment mechanism to decide social security cases is incorrect. Consequently, defendant is filing this motion under Fed. R. Civ. P. 7(b)(1). Id.

Respectfully submitted,

JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney
      /s/
FRED E. HAYNES, D.C. Bar #165654
Assistant United States Attorney
555 Fourth Street, N.W., Rm. E-4110
Washington, D.C. 20530
202.514.7201

OF COUNSEL:

David Black
General Counsel

Gwen Jones Kelley
Acting Associate General Counsel

Bradley C. Howard
Attorney
Office of Program Law
Office of the General Counsel
Social Security Administration
Baltimore, Maryland

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH E. SMITH, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil Action No. 07-0485 ESH |
| MICHAEL J. ASTRUE<br>Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) ) |

<u>ORDER</u>

Upon consideration of the motions for judgment of reversal and for judgment of affirmance, and the entire record herein, it is this ____ day of _____, 200_,

ORDERED that plaintiff's motion for judgment of reversal is denied; and it is further

ORDERED that defendant's motion for judgment of affirmance is granted; and it is further

ORDERED that this case is dismissed with prejudice.  This is a final, appealable order.

UNITED STATES DISTRICT JUDGE

Copies to counsel of record

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH E. SMITH,                                  Plaintiff, <br><br>vs. <br><br>MICHAEL J. ASTRUE <br>Commissioner of Social Security, <br><br>          Defendant. | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 07-0485 ESH <br> ) <br> ) <br> ) <br> ) <br> ) |

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
FOR JUDGMENT OF AFFIRMANCE AND IN OPPOSITION
TO PLAINTIFF'S MOTION FOR JUDGMENT OF REVERSAL

Statement of the Issue

Whether the Commissioner's determination that the plaintiff, Joseph E. Smith, was capable of performing a range of work that exists in significant numbers in the economy and was therefore not disabled within the meaning of the Social Security Act is supported by substantial evidence in the administrative record.

Statement of the Case

1. Summary

The plaintiff applied for disability insurance benefits and supplemental security income (SSI) payments based upon disability on October 18, 2004, alleging that he had been disabled since March 6, 2004 due to a back impairment (Tr. 50-56, 61-62).[1] The Commissioner denied the plaintiff's applications initially and upon reconsideration (Tr. 27-33, 36-39, 247-258).

The plaintiff requested an administrative hearing, and on May 1, 2006, he received a hearing at which he was represented by counsel and at which an independent vocational expert testified (Tr. 259-278). An Administrative Law Judge (ALJ), G. B. Arthur, considered the case de novo, and on June 22, 2006, he found that the plaintiff was not disabled or entitled to benefits pursuant to Titles II or XVI of the Social Security Act (the Act) (Tr. 17-24). Judge Arthur's

---

[1] "Tr." refers to the transcript of the administrative record which was filed with Defendant's answer.

decision became the final decision of the Commissioner upon the Appeals Council's subsequent denial of the plaintiff's request for review (Tr. 6-9), and the plaintiff thereafter commenced the instant action.

2.   <u>Applicable Law</u>

To qualify for a period of disability and disability insurance benefits under sections 216(i) and 223 of the Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under age 65, file an application for disability benefits and a period of disability, and be under a "disability" as defined in the Act.

The term "disability" is defined in section 223(d) to mean:

> (1)(A)  inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;...
> . . . .
> (2)  For purposes of paragraph (d)(1)(A) --
>
> (2)(A)  an individual...shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work....
> . . . .
>
> (5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner may require.

In order to qualify for supplemental security income payments based upon disability, pursuant to section 1602 of the Social Security Act, 42 U.S.C. § 1381a, an individual must meet identical definitional requirements and additionally have income and resources not in excess of statutorily specified amounts (42 U.S.C. § 1382).

3.   <u>Statement of Facts</u>

The Commissioner adopts the facts as stated in the hearing decision (Tr. 17-24) and as set forth in the Argument below.

4.     Judge Arthur's Decision

In evaluating the plaintiff's claim for disability benefits, Judge Arthur employed the sequential process of evaluation, as set forth at 20 C.F.R. §§ 404.1520, 416.920 (Tr. 18-22). Analyzing the threshold requirement of step one, Judge Arthur began with a finding that the plaintiff had not engaged in substantial gainful activity since the date he alleges his disability began (Tr. 18). Further, Judge Arthur determined that, during the relevant period, the plaintiff had a severe back disorder (step two), but that there was an absence of clinical findings and test results that would indicate that his impairments were included in, or medically equivalent in severity, to those found in the "Listing of Impairments" set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1 (step three) (Tr. 19). Had the plaintiff's impairments been included in, or equivalent in severity to those included in, the Listings, he would have been found conclusively disabled without the need for further inquiry. 20 C.F.R. §§ 404.1520(d), 416.920(d). In determining that the plaintiff's impairments did not meet or equal the conclusive disability standard required by the Listings, Judge Arthur analyzed the evidence with particular reference to the impairments set forth in Section 1 of the Listings (musculoskeletal impairments). The plaintiff does not currently claim that he meets or equals the conclusive disability standard required by the Listings.

Proceeding with his analysis, Judge Arthur reviewed in detail the relevant medical and non-medical evidence of record and thereupon determined that plaintiff's impairments limited him to the performance of a range of work activity at the light level of exertion. In particular, Judge Arthur determined that, although plaintiff could perform a range of work at the light exertional level, plaintiff could not climb ladders, ropes, or scaffolds; or be exposed to hazardous heights, hazardous moving machinery, extreme temperature changes, or excessive vibration. Judge Arthur further found that the plaintiff's work activity must involve a low stress routine (requiring no more than moderate attention and concentration and persistence and pace for prolonged periods due to back pain) and involve no more than occasional balancing, stooping,

3

crouching, and climbing of stairs and ramps (but no kneeling or crawling).  In addition, the work must allow for moderate pain and moderate limitations as to performing activities within a schedule and maintaining regular attendance and punctuality.  Finally, Judge Arthur found that the plaintiff could not perform work involving lower extremity use of push and pull controls or above-the-shoulder lifting or carrying, and that he could walk or stand no more than 4 hours in an 8-hour day and sit no more than 6 hours in an 8-hour day (Tr. 19-20).

      Since the plaintiff's past work required abilities inconsistent with his assessed limitations, Judge Arthur determined that plaintiff was incapable of returning to that work (step four), but that he nevertheless retained the capacity to perform a number of jobs that exist in significant numbers in the national economy (step five), a determination consistent with the testimony of an independent and impartial vocational expert  (Tr. 22-23, 271-277).  Accordingly, Judge Arthur concluded that the plaintiff was not disabled within the meaning of the Social Security Act and that he was therefore not entitled to disability benefits pursuant to Titles II or XVI of the Act.

Argument

> The Commissioner's determination that the plaintiff, Joseph E. Smith, had been capable of performing a limited range of work that exists in significant numbers in the economy and was therefore not disabled within the meaning of the Social Security Act is supported by substantial evidence in the administrative record and should be affirmed.

      The Social Security Act limits judicial review of the Commissioner's final decision; if the Commissioner's decision is supported by substantial evidence, it should be affirmed.  42 U.S.C. § 405(g).  Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (l971).  The test "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." Fla. Mun. Power Agency v. FERC, 315 F.3d 362, 365-66 (D.C. Cir.) (internal quotation omitted), *cert. denied,* 540 U.S. 946 (2003).  In reviewing a case for substantial evidence, the court must give considerable deference to the decision rendered by the ALJ, ensuring only that the decision is in accordance with applicable law and rests upon

substantial evidence.  Davis v. Shalala, 862 F. Supp. 1, 4 (D.D.C. 1994).  The court may not try the case de novo or reweigh the evidence before it.  Davis v. Heckler, 566 F. Supp. 1193, 1195 (D.D.C. 1983).  It is sometimes said that substantial evidence is "[e]nough [evidence] to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951).  If the Commissioner's findings are supported by substantial evidence and in accordance with applicable law, they must be treated as conclusive and the decision must be affirmed.  42 U.S.C. § 405(g).

At the outset, it is important to delineate exactly what is - and is not - at issue in this case.  The plaintiff does not allege that his impairments meet or equal the conclusive disability standard set forth in the Commissioner's Listing of Impairments.  He does not contend that the limitations found by Judge Arthur were inconsistent with the performance of the jobs cited in the impartial testimony of the vocational expert (Tr. 271-277).  And he does not and cannot dispute that the jobs referenced by that expert exist in significant numbers in the national economy.

Instead, the plaintiff alleges, first, that Judge Arthur erroneously assessed the plaintiff's residual functional capacity (RFC); second, that Judge Arthur did not properly evaluate the plaintiff's subjective complaints of disabling pain; and third, that Judge Arthur did not properly develop the administrative record.

The Commissioner respectfully submits that each of these contentions is unsupportable on this record and as a matter of law.  The record contains substantial evidence to support the conclusion that the plaintiff was not disabled within the meaning of the Act during the time period relevant to this case.  The Commissioner's determination in that regard should be affirmed by this Court.

A.   <u>Judge Arthur's Determination Concerning the Plaintiff's Residual Functional Capacity is Supported by Substantial Evidence.</u>

The plaintiff argues that Judge Arthur failed to follow Social Security Ruling (SSR) 96-8p by failing to assess the plaintiff's work-related abilities on a function-by-function basis,

failing to set forth a narrative discussion which adequately explains his RFC assessment, and failing to properly consider evidence from the plaintiff's treating sources. Plaintiff's Memorandum at pp. 4-10.

SSR 96-8p makes clear that the various functional assessments serve but a single purpose, "to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level." Judge Arthur expressly determined that the plaintiff was capable of performing the exertional demands of light work[2] and thereupon examined the evidence as a whole in concluding that his impairments imposed a wide range of additional non-exertional limitations, including a preclusion on work involving kneeling and crawling; a preclusion on exposure to temperature extremes, workplace hazards, ladders, ropes, and scaffolds; a limitation to no more than occasional balancing, stooping, crouching, and climbing; a preclusion on lower extremity use of push and pull controls and above-the-shoulder lifting or carrying; and a preclusion on walking more than 4 hours in an 8-hour day and sitting more than 6 hours in an 8-hour day (Tr. 19-20).

Judge Arthur further found that the plaintiff had significant levels of pain which imposed additional moderate functional limitations, including on his ability to concentrate for prolonged periods of time, his ability to perform activities within a schedule, his ability to maintain attendance and punctuality, and his ability to complete a normal work day without unreasonable length and number of rest periods (Tr. 273-274). This comprehensive assessment is in complete accord with the medical evidence of record, which indicated that the plaintiff complained of back pain and showed some mild back tenderness upon palpation, but that his ranges of motion, his manipulative abilities, his sensory abilities, his strength, and his gait were all normal upon examination (Tr. 113, 114, 143, 144). For example, treating physician Dr. Dennis reported in July 2004 that the plaintiff showed some tenderness in the lumbar region but enjoyed normal

---

[2] Exertional capacity involves sitting, standing, walking, lifting, carrying, pushing and pulling. 20 C.F.R. §§ 404.1569a, 416.969a.

strength, normal gait, and normal sensation (Tr. 114). A physical examination conducted by Dr. Dennis in October 2004 showed that the plaintiff had normal gait and coordination with normal strength and normal sensation (Tr. 113). A physical therapy evaluation revealed that the plaintiff enjoyed normal balance and an unremarkable posture (Tr. 175). The evaluation further revealed that the plaintiff's ability to balance, measured by his ability to sit and stand, was normal (Tr. 176). A February 2005 evaluation report revealed that the plaintiff continued to complain of back pain, but that his balance (measured by his ability to sit and stand), gait, and posture were unremarkable while his ranges of motion, strength, and endurance were all normal (Tr. 155-156).

As Judge Arthur noted in his decision, the objective medical evidence generally showed normal findings and suggested that the plaintiff was not precluded from the ability to perform work activity (Tr. 21). It is clear that in making his RFC assessment, Judge Arthur took into account the objective medical evidence of record and the plaintiff's subjective complaints of pain. Indeed, Judge Arthur's recitation of the plaintiff's functional abilities and limitations, both exertional and non-exertional, was remarkably detailed and precise. And, with the sole exception of an unsupported statement from Dr. Dennis to which Judge Arthur properly afforded no weight, no treating, examining, or reviewing medical source stated that the plaintiff could not work or posited even a single, long-term functional restriction that was not included in Judge Arthur's detailed assessment.

Under these circumstances, as stated in SSR 96-8p:

> [W]hen there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.

Judge Arthur complied precisely with this directive of the Ruling, to the plaintiff's understandable dissatisfaction. Simply put, SSR 96-8p requires only that the enumerated functions be considered, not that they be expressly enumerated, even in the absence of credible objective evidence as to any relevant limitation. See e.g. Johansen v. Apfel, No. 98-

35199, 1999 WL 170793 (9th Cir. March 5, 1999) (rejecting the argument that SSR 96-8p required the enumeration of each of the exertional capacities delineated therein in the absence of credible evidence as to a limitation in these functions).

The plaintiff also argues that Judge Arthur failed to properly evaluate an opinion issued by treating physician Dr. Dennis in December 2004 (Tr. 185). The treatment records from plaintiff's medical sources, including Dr. Dennis, consistently show that plaintiff's physical condition was essentially normal upon physical examination and that plaintiff's subjective complaints improved with medication (Tr. 113, 114, 118, 126). However, in December 2004, Dr. Dennis completed a form on which he stated that the plaintiff was "100 percent permanently disabled." (Tr. 185). Judge Arthur considered this report but did not afford it weight because it was "contrary to the evidence as a whole" (Tr. 21).

It has long been noted that form reports - in which a physician's only obligation is to check a box or fill in a blank - are entitled to little weight in the adjudicative process. See e.g. Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996); Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993); O'Leary v. Schweiker, 710 F.2d 1334, 1341 (8th Cir. 1993). Moreover, and with regard to the particular subject of Dr. Dennis's form report - the plaintiff's residual functional capacity[3] and disability status - Dr. Dennis's status as one of the plaintiff's treating physicians is irrelevant, since the Commissioner's regulations specifically state that "the final responsibility for deciding [these issues] is reserved to the Commissioner. We will not give any special significance to the source of the opinion on [these issues]." 20 C.F.R. §§ 404.1527(e), 416.927(e).

In any event, substantial evidence in the record clearly counters Dr. Dennis's assessment

---

[3] A claimant's residual functional capacity delineates what work-related functions the claimant can still perform despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). It is determined at step four of the sequential evaluation process, when the burden of proof is still on the claimant. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

of a "100 percent" disability. In fact, Dr. Dennis's own treatment notes, as mentioned above, undermine this finding. Dr. Dennis reported that, although the plaintiff had some tenderness in the lumbosacral area, he enjoyed full strength, normal gait, normal sensation, and normal reflexes (Tr. 114). Dr. Dennis reported in September 2004 that an examination of the plaintiff was normal (Tr. 204). Treatment notes reveal that the plaintiff's condition improved with medication (Tr. 126, 246). A physical therapy note from September 2004 revealed that the plaintiff was not under any medical restrictions (Tr. 177). Upon a review of Dr. Dennis's treatment notes, and in light of all of the evidence then-extant, Isabel Pico, M.D., a State Agency physician, stated that plaintiff was capable of performing light work activity, a finding consistent with the later determination of Judge Arthur regarding the plaintiff's exertional capacity (Tr. 145-151). State Agency physicians are deemed, by regulation, to be "highly qualified ... experts in Social Security disability evaluation," and their opinions constitute medical evidence that is considered in the disability determination process. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i).

     Dr. Dennis's form assessment thus stands alone, unsupported even by his own contemporaneous treatment records and contradicted by virtually all of the relevant evidence of record. Under such circumstances, as was noted in Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996), in language fully applicable to the instant case:

> [I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. All Keller gave here was a conclusory opinion based upon Craig's subjective reports....

See also 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

     Plaintiff also argues that Judge Arthur failed to properly consider the opinion of treating physician Dr. Wallace that the plaintiff was limited in his ability to "walk, stand, stoop, kneel, lift, reach, push and pull" (Tr. 190-194). Plaintiff's Memorandum at p. 8. This argument is without merit. As discussed above, Judge Arthur's RFC assessment included numerous functional limitations, including limitations which are remarkably similar to Dr. Wallace's findings. Judge Arthur properly noted that Dr. Wallace's own reports indicated that the plaintiff

9

had achieved full-weight bearing and had not undergone any surgery for his back condition (Tr. 20).  The record shows that Dr. Wallace's evaluation of the plaintiff revealed normal cervical movement and lumbar movement that was limited but not precluded (Tr. 142).  Dr. Wallace found that the plaintiff's other ranges of motion were all normal and that he had normal manipulative abilities (Tr. 143-144).

      Despite plaintiff's assertion, Judge Arthur did not implicitly reject Dr. Wallace's opinion.  On the contrary, Judge Arthur's assessment of the plaintiff's RFC properly incorporates the limitations found by Dr. Wallace.  Dr. Wallace's opinion upon which the plaintiff relies indicated that the plaintiff's ability to walk, stand, stoop, kneel, lift, reach, push, and pull was limited; however, Dr. Wallace specifically declined to find that the plaintiff was <u>precluded</u> from these activities; he merely found that the plaintiff's ability to perform them was limited (Tr. 194).  The detailed and comprehensive RFC assessed by Judge Arthur in this case is consistent with Dr. Wallace's findings.  It must be noted, however, that even if one assumes that the plaintiff was even more restricted than Judge Arthur found him to be -- i.e., that the plaintiff's ability to sit and stand was so limited as to require the ability to sit or stand at will throughout the work day -- Judge Arthur elicited proper vocational testimony and made an alternative finding at step five showing that there were jobs that could be performed despite a more restricted RFC, so that the plaintiff would still be found to be "not disabled" at step five (Tr. 23, 274-277).  The use of alternative dispositions has been repeatedly approved by the courts.  As was stated in <u>Murrell v. Shalala</u>, 43 F.3d 1388(10th Cir. 1994), "[w]hatever the particular result in any given case, the use of alternative dispositions generally benefits everyone: the [Commissioner] relieves a pressing work load by resolving cases thoroughly once; the courts avoid successive, piecemeal appeals; and litigants are spared the protracted delays that result when a case drags on incrementally, bouncing back and forth between administrative (re)determinations and judicial review thereof."  43 F.3d at 1389.

      The RFC assessment does not exactly mirror Dr. Wallace's findings because Judge

Arthur took the entire record into account, including the plaintiff's credible subjective complaints documented in the record and raised during the hearing, when assessing plaintiff's RFC. Nevertheless, it is clear that Dr. Wallace's opinion is not inconsistent with Judge Arthur's RFC assessment. The plaintiff's argument that Judge Arthur failed to consider Dr. Wallace's opinion is not supported by the record.

B.     Plaintiff's Subjective Complaints Do Not Establish His Claim of Disability.

As his next challenge, the plaintiff contends that Judge Arthur erred in failing to properly evaluate the plaintiff's subjective allegations of disabling pain. Plaintiff's Memorandum at pp.10-12. In advancing this contention, the plaintiff cites not a single evidentiary item that would indicate he was in any manner more functionally limited than he was determined to be by Judge Arthur. Instead, the plaintiff argues that Judge Arthur's credibility assessment was erroneous because he failed to explicitly discuss in his decision the two-step credibility determination process established in 20 C.F.R. §§ 404.1529, 416.929. This argument overlooks the fact that, at the second step of the sequential evaluation process, Judge Arthur did expressly find that the plaintiff had a "severe" back disorder characterized by lumbar spondylosis and radiculopathy which significantly restricted his capacity to perform "some basic work activities" (Tr. 19). Moreover, Judge Arthur determined that, as a result of the plaintiff's severe impairment and the pain associated therewith, the plaintiff was limited to a carefully delineated range of light work activity (Tr. 20). In fact, when Judge Arthur was setting out the detailed RFC assessment for the plaintiff, he specifically noted that some of the additional non-exertional functional impairments existed "due to low back pain" (Tr. 20). A review of Judge Arthur's decision in its entirety makes clear that, although the two-step process was not specifically described, it was followed in the instant case and the error, if any, was harmless.

In any event, although the plaintiff did indeed claim limitations in excess of those reflected in the documentary record and accepted by Judge Arthur, the law is clear that subjective allegations, standing alone, cannot sustain a finding of disability. To the contrary, as was stated

11

in Craig v. Chater, 76 F.3d 585, 592 (4th Cir. 1996), "pain is not disabling per se, and subjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof" [quoting Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)]. See also 20 C.F.R. §§ 404.1529(a), 416.929(a); Simms v. Sullivan, 877 F.2d 1047, 1051 (D.C. Cir. 1989) ("[t]he Act makes clear that a subjective complaint of pain is not sufficient to establish disability"); Brown v. Bowen, 794 F.2d 703, 707 (D.C. Cir. 1986) ("the mere fact that working may cause a claimant pain or discomfort does not mandate a finding of disability").

In the instant case, while not in any sense implying that the plaintiff was "free of pain" or unlimited in his functional abilities, Judge Arthur nevertheless determined that his pain and limitations were neither disabling in nature nor preclusive of his ability to perform a carefully delineated range of substantial gainful activity at the light exertional level during the relevant period (Tr. 21).

In making this determination, Judge Arthur considered the entire record,[4] a record which (a) includes repeated and uncontradicted descriptions of the plaintiff being in no acute distress (Tr. 114, 118, 121, 122, 125); (b) includes repeated descriptions of the plaintiff's posture as being unremarkable and his balance, measured by his ability to sit and stand, as being normal (Tr. 155, 156, 168, 172, 176); (c) indicates repeatedly that the plaintiff had normal motor strength, a normal gait, and no significant sensory or reflex abnormalities (Tr. 113, 114, 156, 157, 172); (d) contains the considered assessment of Dr. Isabel Pico, a State Agency physician, following a review of the medical and non-medical evidence as a whole, as to the plaintiff's ability to perform a range of light work activity (Tr. 145-152); (e) contains medical evidence and plaintiff's testimony indicating that the plaintiff's pain was improved to some degree with medication and

---

[4] It has long been recognized that the Court must engage in "careful scrutiny of the entire record" to determine whether substantial evidence supports the conclusions reached by the ALJ. Brown, supra, 794 F.2d at 705.

treatment (Tr. 126, 246, 264, 265)[5]; and (f) indicates that the plaintiff was engaged in a number of daily activities inconsistent with the disabled status he now alleges, activities that included caring for his granddaughter, shopping, performing household cleaning as necessary, going out of the house as needed, doing laundry, going to church, going for walks, and playing ball (Tr. 21, 84, 85, 88, 95, 97).[6]

In short, and particularly given the universally-recognized deference to be accorded an ALJ's credibility determinations with respect to subjective allegations, see e.g. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984), it can hardly be asserted that Judge Arthur's unwillingness to fully credit the plaintiff's subjective allegations is lacking in substantial support in the record herein..

C.    Judge Arthur Adequately Developed the Administrative Record.

Plaintiff next suggests that Judge Arthur erred in failing to obtain additional evidence which might have supported the plaintiff's claim. Plaintiff's Memorandum at pp. 12-13. The record shows that when initially applying for benefits, the plaintiff stated in his disability application forms that his several medical providers included a Dr. Osei at Howard University and that he was receiving epidural steroid block treatment at Howard University for his back pain (Tr. 100, 103). The record shows that medical records from Howard University were obtained by Judge Arthur after the date of the hearing but prior to the date that he issued his decision (Tr. 189-240). This evidence shows that the plaintiff underwent epidural steroid block treatment at Howard University in 2005, but it does not provide any indication that the plaintiff's functional capacity was any worse or different from the RFC assessed by Judge Arthur in his decision (Tr.

---

[5] If a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986).

[6] "The only fair manner to weigh a subjective complaint ... is to examine how [it] affects the routine of life." Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (Hall, J., concurring). This being the case, the relevance of daily activities to the determination of both credibility and disability is beyond reasonable dispute. See e.g. Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

196-203). In addition, the record shows that Judge Arthur elicited information about the plaintiff's epidural treatments during the hearing and was informed that such treatments provided some relief (Tr. 264). It is clear that the particular evidence at issue was obtained by Judge Arthur and that it was merely cumulative and not particularly probative regarding the issue of the plaintiff's residual functional capacity, given his medically-determined back impairment. It follows that Judge Arthur did not fail to develop adequately the record in this case.

      The plaintiff also argues that Judge Arthur erred by failing to recontact Dr. Dennis for additional evidence. Plaintiff's Memorandum at pp. 13-14. This argument is also without merit. It is true that an ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and that the ALJ cannot rely only on the evidence submitted by the claimant when that evidence is inadequate. Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986)(emphasis added). Further, as the regulations make clear, the duty to recontact a treating source arises only when the evidence as a whole is inadequate to determine the issue of disability. 20 C.F.R. §§ 404.1512(e), 404.1527(c)(2), 416.912(e), 416.927(c)(2). In the instant case, the record contained adequate information - developed over the course of several years, and based upon contemporaneous examinations and objective testing - sufficient to render a determination as to the extent of the plaintiff's impairments. As discussed above, that evidence indicates that the plaintiff was routinely described by his treating sources as being in no apparent distress, exhibiting normal posture, balance, gait, sensation, and strength on physical examination, and indicating that the plaintiff's subjective complaints were alleviated to some extent with medical treatment (Tr. 114, 118, 121, 122, 125, 126, 155, 156, 168, 172, 176, 246, 264, 265).

      The plaintiff argues that Judge Arthur was obligated to recontact Dr. Dennis to resolve a "conflict or ambiguity" in the record. Plaintiff's Memorandum at p. 14. However, plaintiff does not explain what conflict or ambiguity exists or why it must be resolved. As discussed above, Dr. Dennis's treatment notes unambiguously describe the plaintiff's physical condition as being normal upon examination, and that the plaintiff was well-oriented and in no acute distress (Tr.

113, 114).  Judge Arthur properly considered this evidence when assessing the plaintiff's RFC and when considering how much weight to afford Dr. Dennis's subsequent opinion regarding the plaintiff's disability.

Plaintiff also argues that Judge Arthur's decision is erroneous because he failed to order a consultative examination.  Plaintiff's Memorandum at pp. 14-15.  This argument is also unavailing.  The regulations provide that a consultative examination is necessary when the information that an ALJ needs to adjudicate a claim is not readily available from treating source records.  20 C.F.R. §§ 404.1512(f), 416.912(f).  As just discussed, that evidence indicates that the plaintiff was routinely described as being in no apparent distress, exhibiting normal posture, balance, gait, sensation, and strength on physical examination, and indicating that the plaintiff's subjective complaints were alleviated to some extent with medical treatment.  Judge Arthur properly considered this evidence and, in conjunction with evidence regarding the plaintiff's subjective complaints that he obtained during the hearing, Judge Arthur was able to properly assess the plaintiff's RFC and determine that the plaintiff was not disabled under the Act.

Plaintiff has failed to show why it was necessary for Judge Arthur to request and obtain more evidence from Dr. Dennis or from a consultative examiner.  As was noted by the Seventh Circuit in Kendrick v. Shalala, 998 F.2d 455, 458 (1993):

> Only a belief that all possibilities must be exhausted at any cost in money and delay for other claimants could justify ... a remand.  As we remarked at the outset, it is always possible to do more.  How much evidence to gather is a subject on which district courts must respect the [Commissioner's] reasoned judgment ... Judicial review of administrative decisions is deferential.  A decision supported by substantial evidence must be enforced.  When conducting trials in their own courtrooms, judges may indulge a preference for "more" - although most do not, recognizing that cumulative evidence rarely repays the cost of gathering and presenting it.  When reviewing proceedings conducted by others, district judges must respect the authority of administrative officials to decide how much is enough.

Although the plaintiff  may be dissatisfied with both the objective evidence of record and with Judge Arthur's crediting of that evidence, such dissatisfaction can neither render the record incomplete nor compel additional development at the taxpayers' expense.  The Commissioner's

well-reasoned determination should be affirmed.

## Conclusion

In light of the foregoing, it is submitted that the Commissioner's determination that the plaintiff was not disabled within the meaning of the Social Security Act was both reasonable and supported by substantial evidence in the administrative record. The Commissioner's determination should be affirmed.

Respectfully submitted,

JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney
/s/
FRED E. HAYNES, D.C. Bar #165654
Assistant United States Attorney
555 Fourth Street, N.W., Rm. E-4110
Washington, D.C. 20530
202.514.7201

OF COUNSEL:

David Black
General Counsel

Gwen Jones Kelley
Acting Associate General Counsel

Bradley C. Howard
Attorney
Office of Program Law
Office of the General Counsel
Social Security Administration
Baltimore, Maryland