## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

JOSEPH SMITH,

                Plaintiff,

         v.

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,

             Defendant.
_____

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 07-0485 (ESH)

### MEMORANDUM OPINION

Plaintiff brings this action under the Social Security Act, 42 U.S.C. § 405(g), for review

of a decision of the Social Security Administration ("SSA") denying his claims for disability

insurance and supplemental security income benefits.  Currently before the Court are the parties'

cross-motions for judgment.  The issue presented is whether substantial evidence exists to

support the administrative law judge's ("ALJ") determination that plaintiff is not disabled

because he retains the residual functional capacity ("RFC") to perform a significant range of

work that exists in significant numbers in the national economy.  The Court holds that this

finding is supported by substantial evidence in the record.  Accordingly, defendant's motion will

be granted and plaintiff's motion will be denied.

### BACKGROUND

Plaintiff Joseph Smith is a 49-year-old man who resides in Washington, D.C.  He has a

high school education and no additional training.  (Administrative Record ("AR") at 68, 262.)

He has prior work experience as a dishwasher, inserter, driver/helper, floor waxer, and laborer.

(AR at 63, 72, 262-63.)  On October 18, 2004, plaintiff filed applications for disability insurance and supplemental security income benefits alleging that he had been disabled since March 6, 2004, due to low back pain.  (AR at 17, 50-52, 62.)  His claims were denied both initially and upon reconsideration.  (AR at 29-39, 250-54, 256-58.)  Thereafter, he received a hearing before an ALJ, who also denied his claims.  (AR at 14-24.)  The Appeals Council affirmed the decision, thus adopting it as the final decision of the agency.  (AR at 6-10.)

## I.    Evidence before the ALJ

The evidence before the ALJ consisted primarily of (1) SSA disability and function reports completed by plaintiff in connection with his applications for disability benefits; (2) medical records from plaintiff's treating neurologist, Dr. Gary Dennis, and his primary care physician, Dr. Marcus Wallace, as well as physical therapy treatment records from Greater Southeast Community Hospital; (3) a Physical Residual Functional Capacity Assessment and a review of that assessment performed by state agency physicians; and (4) plaintiff's testimony regarding his medical condition.

*Plaintiff's Disability and Function Reports.*  In his initial disability report in October 2004, plaintiff reported that he suffered from lower back pain.  (AR at 62.)  He stated that his condition limited his ability to work because it became "very pain full [sic] after a few hours standing or sitting" and that he had stopped working because it was "very hard to stand up and be productive in an 8 hour day."  (AR at 62.) In an undated disability report in support of his request for a hearing before an ALJ, plaintiff indicated that sometime in March 2005, he had begun to experience numbness and cramps in his left leg, increased pain when "straightening up," and pain when straightening up after sitting "for a period of time."  (AR at 101.)

In November 2004, plaintiff completed a function report in which he stated that he experienced pain when bending, lifting, squatting, standing, reaching, walking, sitting or kneeling and that the pain interfered with his ability to sleep.  (AR at 85, 89.)  Nevertheless, plaintiff reported that his daily activities included caring for his granddaughter while her mother was at work, cleaning the house and doing whatever chores needed to be done, driving, going for walks, shopping, and attending church.  (AR at 84-92.)  In an April 2005 function report, however, plaintiff stated that his daily routine consisted of doing as little as possible and lying in bed to remain comfortable.  (AR at 93.)  However, plaintiff also stated that he prepared meals, did laundry and went shopping approximately once a week and that his hobbies included playing ball and watching television.  (AR at 95-97.)  Although plaintiff stated that he did not drive, he explained that it was because he had no car.  (AR at 96.)

*Medical Records.*  Plaintiff's medical records indicate that Dr. Dennis diagnosed plaintiff with lumbar spondylosis and radiculopathy, but found the results of his neurological examinations to be essentially normal.  (*See* AR at 113-14.)  Similarly, Dr. Wallace's medical reports indicate that he diagnosed plaintiff with low back pain secondary to lumbar spondylosis and mild scoliosis; prescribed Flexeril, Motrin and Naprosyn for pain relief; and referred plaintiff to Dr. Dennis and to physical therapy for additional treatment.  (AR at 117-29, 141-44.)  However, Dr. Wallace's examinations of plaintiff indicate that he found plaintiff's physical condition to be essentially normal.  (*See* AR at 117-29, 141-44.)

In December 2004, however, Dr. Dennis completed a Medical Examination Report in connection with plaintiff's applications for disability benefits in which he stated that plaintiff "has restricted [range of motion] of [his] back worsened by sitting and standing 15-30 minutes." (AR at 184.)  Dr. Dennis also checked boxes on the form indicating that plaintiff's functional

limitations were "moderate" (as opposed to nonexistent, mild, marked or extreme);[1] that plaintiff could sit for less than two hours, stand for less than two hours, and walk for less than two hours; and that plaintiff could lift or carry 10 pounds frequently and no more than 10 pounds total. (AR at 185.) The report also posed the question, "Does the patient's medical condition prevent him/her from working?" While Dr. Dennis did not answer the question directly, he did state that "[p]atient is currently 100% permanently disabled. He needs voc[ational] rehab[ilitation] and job retraining." (AR at 185.)

Dr. Wallace also completed SSA reports on plaintiff's behalf. In his November 2004 report, Dr. Wallace stated that plaintiff had "difficulty standing and walking for long periods of time," but had achieved full weight bearing and had not undergone surgery. (AR at 141.) In this same report, Dr. Wallace noted some limitations on plaintiff's spinal flexion, extension, and rotation, but no limitations on plaintiff's range of motion in his shoulders, elbows, wrists, hips, knees or ankles. (AR at 142-43.) Dr. Wallace also noted that plaintiff's manual manipulative abilities were normal. (AR at 144.) Moreover, in December 2004, Dr. Wallace completed a Medical Examination Report in which he indicated that plaintiff experienced limitations on his abilities to walk, stand, stoop, kneel, lift, reach, push, and pull. (AR at 194.)

Plaintiff's physical therapy records reflect that while plaintiff experienced decreased mobility due to pain, his lower and upper extremity ranges of motion, strength, and balance were all within normal limits, his endurance was good, his posture was unremarkable, he exhibited full

---

[1] Functional limitations were defined as (1) restrictions of activities of daily living; (2) difficulties in maintaining social functioning; (3) difficulties in maintaining concentration, persistence, and/or pace; and (4) repeated episodes of decompensation in work or work like settings, each of an extended duration. (AR at 185.)

weight bearing, and he could perform all movements independently.[2]  (AR at 155-57, 162, 175-76.)

*State Agency Residual Functional Capacity Assessments.*  Plaintiff's records also include the findings of two state agency physicians, Drs. Isabel Pico and Currie Ball, who independently reviewed plaintiff's medical records in order to assess his RFC.  In December 2004, Dr. Pico completed an SSA Physical Residual Functional Capacity Assessment, a form report requiring her to check boxes indicating plaintiff's various physical limitations.  In that assessment, Dr. Pico found that plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for about six hours in an eight-hour workday; sit for about six hours within an eight-hour workday; push and/or pull to an unlimited degree; and occasionally climb, balance, stoop, kneel, crouch, or crawl.  (AR at 145-47.)  She found that plaintiff had no manipulative, visual, communicative, or environmental limitations.  (AR at 148-49.)  Moreover, Dr. Pico indicated that while she believed that plaintiff's symptoms were attributable to a medically determinable impairment, the severity or duration of the symptoms were disproportionate to the expected severity or duration on the basis of that impairment.  (AR at 150.)  She indicated that her opinion was based on plaintiff's complaint of low back pain, a February 2004 x-ray of plaintiff's back, which denoted early degenerative lumbar spondylosis, and Dr. Dennis' October 2004 report stating that plaintiff's MRI demonstrated some lumbar spondylosis but that his neurological examination was within normal limits.  (AR at 146-47.)

On reconsideration, Dr. Ball, a second agency physician, affirmed this assessment.  (AR at 28.)  In support of his decision, he referred to the bases for the original assessment, as well as

---

[2] While plaintiff's earlier physical therapy records reflect that lower extremity range of motion and strength were within functional (as opposed to normal) limits (*see* AR at 168, 171-72, 175-76), later records indicate that these functions were normal.  (*See* AR at 155, 157, 162.)

to findings in plaintiff's rehabilitation services discharge summary that although plaintiff had muscle spasms, difficulty with his gait secondary to pain, and antalgic ambulation, his range of motion and strength were normal, and his endurance was good.[3]  (AR at 181.)  While noting that plaintiff's activities of daily living were restricted by his back pain, Dr. Ball nevertheless recommended that the initial RFC for light work be affirmed.  (AR at 181.)

*Hearing Testimony.*  At the hearing, plaintiff testified that he experienced pain in his lower left hip area, in the left side of his back, in his spinal area and in his knees and that the pain radiated down his left leg and caused numbness and dizziness when he stood up.  (AR at 264, 269.)  He stated that he took prescription Motrin, Naprosyn, and Flexeril to relieve the pain, and had received epidural steroid injections, which provided some temporary pain relief.  (AR at 264-65.)  Nevertheless, plaintiff testified that he continued to engage in the activities indicated in his earlier function reports, with the exception of caring for his granddaughter.  (AR at 266-67.)  In particular, plaintiff stated that his activities included going for walks "every now and then" and walking to the store and that he was able to walk up to a quarter mile and lift a gallon of milk and a bag of groceries, but that he could lift no more than five pounds total.  (AR at 267-68.)  When questioned about pain relief measures, plaintiff testified that he lay down frequently in order to avoid putting pressure on his back.  (AR at 268.)

## II.    The ALJ's Decision

Faced with this evidence, the ALJ denied plaintiff's claims for benefits.  The ALJ found that plaintiff was not disabled within the meaning of the Social Security Act because he retained

---

[3] Although not specified, the physician was apparently referring to plaintiff's discharge summary dated April 4, 2005.  (AR at 155.)

the RFC to perform work that exists in significant numbers in the national economy.[4]  (AR at

18.)  First, the ALJ determined that plaintiff possessed the RFC to perform light work,[5] with the

following limitations:

> [Plaintiff] cannot climb ladders, ropes and scaffolds, or be exposed to hazardous
> heights and hazardous moving machinery, or exposed to extreme temperature
> changes.  He can perform work which requires a low stress routine {i.e. work that

---

[4] RFC is defined as

> what an individual can still do despite his or her limitations.  RFC is an
> administrative assessment of the extent to which an individual's medically
> determinable impairment(s), including any related symptoms, such as pain, may
> cause physical or mental limitations or restrictions that may affect his or her
> capacity to do work-related physical and mental activities. . . .  Ordinarily, RFC is
> the individual's *maximum* remaining  ability to do sustained work activities in an
> ordinary work setting on a **regular and continuing** basis . . . .

Social Security Ruling ("SSR") 96-8p, Titles II and XVI:  Assessing Residual Functional
Capacity in Initial Claims, 1996 SSR LEXIS 5, at *5 (July 2, 1996) (citation omitted) (emphasis
in original).

[5] Pursuant to SSA regulations:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting
> or carrying of objects weighing up to 10 pounds.  Even though the weight lifted
> may be very little, a job is in this category when it requires a good deal of walking
> or standing, or when it involves sitting most of the time with some pushing and
> pulling of arm or leg controls.  To be considered capable of performing a full or
> wide range of light work, you must have the ability to do substantially all of these
> activities.  If someone can do light work, we determine that he or she can also do
> sedentary work, unless there are additional limiting factors such as loss of fine
> dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).  The regulations define sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and
> occasionally lifting or carrying articles like docket files, ledgers, and small tools.
> Although a sedentary job is defined as one which involves sitting, a certain
> amount of walking and standing is often necessary in carrying out job duties.
> Jobs are sedentary if walking and standing are required occasionally and other
> sedentary criteria are met.

*Id.* §§ 404.1567(a), 416.967(a).

requires no more than moderate attention and concentration and persistence and pace for prolonged periods} due to low back pain. He can occasionally climb stairs and ramps and to balance, stoop, and crouch, but no work involving kneeling and crawling. He experiences moderate pain and has moderate limitations as to performing activities within a schedule and maintaining regular attendance for reliability purposes and being punctual within customary tolerances. In addition, he has moderate limitations as to completing a normal work day or workweek without an unreasonable length and number of rest periods. He should have no concentrated exposure to excessive vibration. He should have no lower extremity use of push and pull controls, no above the shoulder lifting or carrying, and no more than 4 hours out of 8 walking or standing or 6 hours out of 8 sitting.[6]

(AR at 20.)

In order to determine whether work was available in the national economy for an individual of plaintiff's age, education, past relevant work experience, and assessed RFC, the ALJ called a vocational expert ("VE") to testify at the hearing. In eliciting this testimony, the ALJ set forth a series of hypothetical scenarios for the VE to consider. In the first four scenarios, the VE was asked to assume that the hypothetical claimant had the same nonexertional limitations as plaintiff had been determined to possess, but with varying abilities to stand, walk and sit. (AR at 273-74.) Specifically, in the first scenario, no limits were imposed on the claimant's ability to stand, walk or sit. (AR at 274.) In the second scenario, the hypothetical claimant was limited to standing and walking for no more than four hours and sitting for no more than six hours in an eight-hour day. (AR at 274.) In the third scenario, the claimant was limited to standing or walking for two hours and sitting for six hours in an eight-hour day, but was deemed to require a sit/stand option with no more than half an hour sitting or standing at any one

---

[6] "Moderate" was defined "to preclude the attention and concentration required for high stress work [and] complex work but which is not at a level of severity to preclude the attention [and] concentration required for less stressful work of an unskilled nature involving using common sense while following instructions." (AR at 19-20 n.1.) "Occasional" was defined to mean occurring from very little up to one-third of an eight hour day. (AR at 19-20 n.1.) "Balancing" was defined to mean normal balancing rather than balancing as part of a work criterion. (AR at 19-20 n.1.)

time period.  (AR at 274-75.)  In the fourth scenario, the claimant was deemed to require a

sit/stand option at his discretion.  (AR at 275.)  Finally, in the fifth scenario, the VE was asked to

assume that the claimant had above moderate, frequent pain with above moderate, frequent

limitations from that pain on performing activities within a schedule, maintaining regular

attendance for reliability purposes, and being punctual within customary tolerances, as well as

above moderate limitations on completing a normal workday or workweek without an

unreasonable length and number of rest periods.  (AR at 275.)  In every case except the last, the

VE identified light and/or sedentary work that the hypothetical claimant would be able to

perform.  Based on the VE's testimony, the ALJ found that plaintiff had the RFC to perform "a

significant range of light and alternatively sedentary work."  (AR at 24.)

**ANALYSIS**

**I.      Standard of Review**

**A.      Scope of Review**

A district court's review of the SSA's findings of fact is limited to determining whether

those findings are supported by substantial evidence.  *Brown v. Barnhart*, 408 F. Supp. 2d 28

(D.D.C. 2006).  Substantial evidence "means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

(citation omitted).  The standard "requires more than a scintilla, but can be satisfied by

something less than a preponderance of the evidence."  *Fla. Mun. Power Agency v. FERC*, 315

F.3d 362, 365-66 (D.C. Cir. 2003) (quoting *FPL Energy Me. Hydro LLC v. FERC*, 287 F.3d

1151, 1160 (D.C. Cir. 2002)).  In making its determination, a court must carefully scrutinize the

record to ensure that the ALJ "has analyzed all the evidence and has sufficiently explained the

weight . . . given to obviously probative exhibits."  *Davis v. Shalala*, 862 F. Supp. 1, 4 (D.D.C.

1994) (quoting *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989)).  Nevertheless, a court "may not reweigh the evidence . . . , nor may it replace the [agency's] judgment concerning the weight and validity of the evidence with its own."  *Davis v. Heckler*, 566 F. Supp. 1193, 1195 (D.D.C. 1983).

### B.    Legal Framework for Determining Disability

To qualify for disability insurance and supplemental security income benefits, an individual must establish that he is "disabled."  42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1).  An individual is disabled under the statute if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *Id.* §§ 423(d)(1)(A), 1382c(a)(3)(A).  For purposes of this definition, an individual will be considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the ALJ must perform a five-step sequential evaluation.  Pursuant to this evaluation, the claimant must show (1) that he is not currently engaged in substantial gainful work; (2) that he has a "severe impairment;" and either (3) that his impairment meets the duration requirement and meets or equals an impairment listed in Appendix 1 to the Commissioner's regulations; or (4) that his impairment renders him incapable of performing "past relevant work."  20 C.F.R. §§ 404.1520, 416.920.  If the claimant prevails on the first four steps, the burden shifts to the ALJ on step five to demonstrate that the claimant can

perform other work based on his RFC, age, education, and past work experience. *Id.* §§ 404.1520(g), 416.920(g).

In this case, the ALJ found that plaintiff had satisfied the first two steps in the process: he had not engaged in substantial gainful work since allegedly becoming disabled, and he had a "severe, medically-determined impairment" - - a back disorder diagnosed by Dr. Dennis as lumbar spondylosis and radiculopathy - - that "significantly restrict[ed] his capacity to perform some basic work activities." (AR at 19.) At step three, the ALJ determined that plaintiff's impairment did not meet or equal an impairment listed in Appendix 1. (AR at 19.) At step four, the ALJ concluded that plaintiff lacked the RFC to perform any of his past work. (AR at 21.) At step five, however, the ALJ concluded that "considering the claimant's age, educational background, work experience, and residual functional capacity, he is capable of making a successful adjustment to work that exists in significant numbers in the national economy." (AR at 23.) Only the ALJ's conclusion at step five is at issue in this case.

## II.    Review of ALJ's Decision

Plaintiff raises three challenges to the ALJ's decision. First, he contends that the ALJ erroneously assessed his RFC. Specifically, he contends that the ALJ failed to comply with the requirement of Social Security Ruling 96-8p[7] to set forth "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence" and failed to give adequate weight to the opinions of his treating physicians. (Pl.'s Mem. Supp. Reversal at 4-10.) Second, he contends that the ALJ failed to properly evaluate his subjective complaints of disabling pain. (*Id.* at 10-12.) Third, he contends that the ALJ violated his duty to adequately develop the administrative record by failing to obtain additional medical

---

[7] SSR 96-8p, 1996 SSR LEXIS 5, at *19.

records, to re-contact Dr. Dennis for additional evidence, and to order a consultative examination of plaintiff.  (*Id.* at 12-16.)

### A.    The ALJ's Determination Regarding Plaintiff's RFC is Supported by Substantial Evidence

#### 1.    The ALJ Properly Identified the Record Evidence on Which he Relied

The ALJ determined that plaintiff possessed the RFC to perform light work with certain limitations due to his significant low back pain, including exertional and postural limitations as well as moderate functional limitations on his abilities to maintain concentration for prolonged periods, work within a schedule, maintain regular attendance and punctuality, and complete a normal workday or workweek without an unreasonable length and number of rest periods.  (AR at 19-20.)  Plaintiff contends that the ALJ failed to identify the record evidence that supports these determinations.  On the contrary, the ALJ's decision makes clear what evidence he relied on:  the medical records of Drs. Dennis and Wallace, plaintiff's physical therapy treatment records, the RFC assessments of the state agency physicians, and, to some extent, plaintiff's testimony.  (*See* AR at 20-21.)

With respect to the medical evidence, the ALJ focused on Dr. Dennis' evaluations of plaintiff following examinations in July and October 2004, a medical report prepared by Dr. Wallace following an examination of plaintiff in November 2004, and evaluations of plaintiff in 2004 and 2005 by a physical therapist.  The ALJ acknowledged Dr. Dennis' statements that plaintiff's x-rays showed some degenerative changes in the lumbar spine and a magnetic resonance imaging showed some lumbar spondylosis, but noted that Dr. Dennis' "objective findings were essentially normal," with motor examination revealing 5/5 strength in all extremities, sensory examination intact, and gait and coordination within normal limits.  (AR at 20; *see* AR at 113-15.)  Similarly, the ALJ noted that Dr. Wallace had diagnosed plaintiff with

low back pain secondary to lumbar spondylosis and mild scoliosis, but found significant the physician's statements that plaintiff had not undergone surgery and had achieved full weight bearing.  (AR at 20; *see* AR at 141.)  The ALJ also noted that plaintiff's physical therapy records indicated that plaintiff's range of motion and strength were within normal limits, and his balance and endurance were good.  (AR at 20; *see* AR at 155-57, 162, 175-76.)

While acknowledging that the state agency physicians had not examined plaintiff, the ALJ nevertheless found them "persuasive to the extent of the residual functional capacity determined," because the physicians had "provided specific reasons for their opinions about the claimant's residual functional capacity, showing that the opinions were grounded in the evidence in the case."  (AR at 20.)

Thus, the ALJ concluded that "[t]he majority of the objective evidence shows normal findings, and there were no statements from providers that the claimant could not work, with the exception of one opinion . . . which can be discounted."  (AR at 21.)  Contrary to plaintiff's contention, this analysis adequately "build[s] an accurate and logical bridge from the evidence to [the ALJ's] conclusion."  *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006) (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)) (internal quotation marks omitted).

Moreover, Drs. Dennis and Wallace each completed Medical Examination Reports that contained findings consistent with many of the ALJ's specific determinations about plaintiff's RFC.  For example, Dr. Dennis characterized the degree of plaintiff's functional limitations as "moderate" and indicated that plaintiff could frequently lift or carry 10 pounds.  (AR at 185.)  In his report, Dr. Wallace found limitations on plaintiff's abilities to engage in various physical activities such as walking, standing, stooping, kneeling, lifting, pushing, and pulling.  (AR at 194.)  While the ALJ did not specifically mention these findings in his decision, he was clearly

aware of them since he adopted physical limitations in conformance with the findings and, as discussed in more detail below, he specifically referred to Dr. Dennis' report.[8]

While many of the ALJ's determinations regarding plaintiff's RFC find substantial support in the record, it is a closer question whether the ALJ's findings that plaintiff could occasionally lift 20 pounds[9] and walk or stand for up to four hours and sit for up to six hours per eight hour day are supported by substantial evidence since these findings were based only on the assessments of state agency physicians who did not examine plaintiff.  However, the Court need not decide this issue because the ALJ's alternative disposition that plaintiff could perform sedentary work is supported by substantial evidence.[10]  As the ALJ noted, "even when the limitations were **arguendo** made more restrictive to include . . . a sit stand option at the claimant's discretion; work was identified by the impartial vocational expert that existed in significant numbers in the national and regional economies."  (AR at 23 (emphasis in original).)  Specifically, when presented with a hypothetical scenario involving a claimant with plaintiff's

---

[8] Plaintiff alleges that the ALJ provided no rationale to support his determination that plaintiff was precluded from performing some work activities (*e.g.*, climbing ladders, ropes or scaffolds, kneeling, crawling, above the shoulder lifting and carrying, and lower extremity use of push and pull controls).  (Pl.'s Mem. Supp. Reversal at 7.)  While the ALJ's determination was at odds with that of the agency physicians in this respect, it was consistent with Dr. Wallace's findings. It is the ALJ's duty to resolve inconsistencies in the record, and the ALJ cannot be faulted for crediting to some degree plaintiff's complaints of pain and its negative effect on his ability to work.  Moreover, these findings were all in plaintiff's favor.  Therefore, even if they were in error, plaintiff has not been prejudiced.

[9] By finding that plaintiff could perform light work, the ALJ necessarily found plaintiff capable of occasionally lifting 20 pounds.  *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (defining light work).

[10] A number of courts have accepted the use by the SSA of alternative dispositions.  *See, e.g., Murrell v. Shalala*, 43 F.3d 1388, 1389-90 (10th Cir. 1994); *Schmidt v. Sullivan*, 914 F.2d 117, 119 (7th Cir. 1990); *Householder v. Bowen*, 861 F.2d 191, 191-92 (8th Cir. 1988); *Tillery v. Schweiker*, 713 F.2d 601, 602-03 (10th Cir. 1983); *Murphy v. Callahan*, No. 96-7114, 1997 U.S. App. LEXIS 22250, at *8-*9 (10th Cir. Aug. 19, 1997); *Gibson v. Barnhart*, No. 06-4106, 2007 U.S. Dist. LEXIS 31706, at *7-*9 (D. Kan. Feb. 8, 2007); *Atkins v. Shalala*, 837 F. Supp. 318, 324-26 (D. Or. 1993); *Curtis v. Sullivan*, 808 F. Supp. 917, 921, 924 (D.N.H. 1992).

limitations as found by the ALJ (AR at 20), and who would require work that permitted him to

sit or stand at his discretion, the VE identified several sedentary jobs that such an individual

would be able to perform.  By definition, sedentary work would require lifting a maximum of 10

pounds and only occasional walking and standing.  *See* 20 C.F.R. §§ 404.1567(a), 416.967(a).

Plaintiff's ability to comply with these requirements is supported by substantial evidence in the

record, including evidence presented by plaintiff's physicians.  (*See* AR at 113-14, 141-44, 184-

85, 190-94.)

### 2. The ALJ Adequately Considered the Opinions of Plaintiff's Treating Physicians

Plaintiff next contends that the ALJ improperly ignored Dr. Dennis' opinions in his

December 2004 Medical Examination Report that plaintiff could sit, stand and walk, each for

less than two hours; that plaintiff could lift a maximum of 10 pounds; and that plaintiff had

restricted range of motion in his back that was worsened by sitting and standing for 15 to 30

minutes.  (Pl.'s Mem. Supp. Reversal at 8.)  Pursuant to this Circuit's "treating physician rule,"

reports of a claimant's treating physicians, who have greater familiarity with a claimant's

condition, must be accorded substantial weight.  *Poulin v. Bowen*, 817 F.2d 865, 873 (D.C. Cir.

1987).  "A treating physician's report is binding on the fact-finder unless contradicted by

substantial evidence."  *Butler v. Barnhart*, 353 F.3d 992, 1003 (D.C. Cir. 2004) (quoting

*Williams v. Shalala*, 997 F.2d 1494, 1498 (D.C. Cir. 1993)) (internal quotation marks omitted).

Therefore, an ALJ who rejects a treating physician's opinion must explain his reasons for doing

so. *Id.*

Here, the ALJ thoroughly explained his reasons for rejecting Dr. Dennis' opinion, and

these reasons were based on substantial evidence.  Specifically, while noting Dr. Dennis' report,

the ALJ concluded that the physician's opinion that plaintiff was 100 percent disabled was

entitled to no weight because it was contrary to the evidence as whole.[11]  In particular, the ALJ

explained that "there were many occasions where range of motion coupled with other normal

findings which were within normal limits."  (AR at 21.)  The record supports this assessment.

While treatment records from Drs. Dennis and Wallace indicate that plaintiff consistently

complained of pain, his physical condition upon examination was essentially normal.  (*See* AR at

113-14, 117-18, 121-22, 125-29.)   Dr. Dennis' examination records indicate that although

plaintiff's lower back and left hip were tender, he exhibited full strength, and his gait, sensation,

reflexes, and coordination were all normal.  (AR at 113-14.)  Diagnostic tests ordered by Dr.

Wallace came back normal.  (AR at 192-93.)  Plaintiff's physical therapy records indicate that

while plaintiff experienced decreased mobility due to pain, his lower and upper extremity ranges

of motion, strength, and balance were all within normal limits, his endurance was good, his

posture was unremarkable, he exhibited full weight bearing, and he could perform all movements

independently.  (AR at 155-57, 162.)

 The ALJ also found that plaintiff's statements, both in the record and at the hearing,

regarding his activities contradicted Dr. Dennis' opinion.  In particular, the ALJ noted plaintiff's

statements that he engaged in such activities as preparing meals, doing laundry, shopping,

driving, caring for his granddaughter, attending church, and walking up to a quarter of a mile.

(*See* AR at 84-92, 95-97, 265-67.)

---

[11] That the ALJ did not specifically address each of Dr. Dennis' opinions, but instead focused on
the doctor's ultimate conclusion that plaintiff was completely disabled is of no consequence.
First, Dr. Dennis' opinion that plaintiff could sit, stand and walk, each for less than two hours
accords with his opinion that plaintiff was completely disabled.  *See* SSR 96-8p (noting that RFC
is ordinarily an assessment of the ability to do sustained work for eight hours a day, five days a
week or an equivalent work schedule).  Therefore, this opinion could be rejected for the same
reasons that the ALJ rejected Dr. Dennis's ultimate conclusion of complete disability.  Moreover,
the ALJ's findings that plaintiff was capable of performing sedentary work and his recognition of
plaintiff's postural limitations adequately addressed Dr. Dennis' other opinions.

Moreover, Dr. Dennis' conclusion that plaintiff was completely disabled is contradicted by his opinion that plaintiff "needs voc[ational] rehab[ilitation] and job retraining."[12]  (AR at 185.)  If plaintiff were completely and permanently disabled, as Dr. Dennis claimed, vocational rehabilitation and job retraining would have been useless.  Where such conflicting evidence exists, the ALJ has the responsibility for deciding the issue.  *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ") (citations omitted)); *see also Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994) (finding conflicting evidence in regard to the severity of plaintiff's emotional impairments, which barred a judicial award of benefits where, *inter alia*, plaintiff's treating psychiatrist originally opined that plaintiff was disabled from doing any work but later stated that he might be a "suitable candidate for job training").

Plaintiff also argues that the ALJ ignored Dr. Wallace's opinions that plaintiff's condition was slowly progressive and that plaintiff was limited in his abilities to walk, stand, stoop, kneel, lift, reach, push, and pull.  (Pl.'s Mem. Supp. Reversal at 8.)  The record, however, does not support this claim.  In his Medical Examination Report, Dr. Wallace indicated that plaintiff's capacities for walking, standing, stooping, kneeling, lifting, reaching, pushing, and pulling were all limited but not entirely precluded.  (AR at 194.)  Consistent with this opinion, the ALJ found limitations on plaintiff's abilities to engage in essentially all of these activities.

Accordingly, plaintiff's contention that the ALJ failed to properly consider the opinions of his treating physicians must fail.  While plaintiff contends that the ALJ's opinion is "without medical basis" because he did not wholly adopt the opinions of the state agency physicians or

---

[12] Dr. Dennis also did not respond to the question in the report that asked whether plaintiff's condition prevented him from working.  (AR at 185.)

plaintiff's treating physicians (*see* Pl.'s Mem. Supp. Reversal at 9), it was the ALJ's duty to consider the entire record rather than to simply adopt the views of one set of physicians.

### B.    The ALJ Properly Evaluated Plaintiff's Subjective Complaints of Pain

Plaintiff's second basis for reversal of the SSA's decision is that the ALJ failed to properly assess his subjective complaints of pain. (Pl.'s Mem. Supp. Reversal at 10-12.) SSA regulations prescribe a two-step process for determining whether a claimant is disabled by pain. 20 C.F.R. §§ 404.1529, 416.929. "First, the claimant must adduce 'medical signs or laboratory' findings evidencing a 'medically determinable impairment that could reasonably be expected to produce' the alleged pain." *Butler v. Barnhart*, 353 F.3d 992, 1004 (D.C. Cir. 2004) (quoting 20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b)). Second, the ALJ must evaluate "the persistence and intensity of the claimant's pain as well as the extent to which it impairs [his] ability to work." *Id.* (citing 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1)). In making this evaluation, the ALJ considers all the available evidence, including the claimant's history, the medical signs and laboratory findings, and statements from the claimant, physicians, and others. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). Moreover, the step two evaluation requires the ALJ to make a finding on the credibility of the claimant and set forth specific reasons for that finding based on a consideration of the entire record. SSR 96-7p, Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 SSR LEXIS 4, at *2-*4 (July 2, 1996); *Butler*, 353 F.3d at 1005.

While the ALJ did not explicitly discuss the two-step determination process, he nevertheless made findings that met each of these requirements. Consistent with step one, the ALJ found that plaintiff had "the following severe, medically determined impairment: a back disorder" diagnosed as lumbar spondylosis and radiculopathy. (AR at 19.) Consistent with step

two, the ALJ found plaintiff "credible with regard to the presence of some degree of discomfort and his inability to do some types of work," but "not credible with regard to his allegations that he is unable to perform any type of work . . . ." (AR at 21.)  This credibility assessment was based on the same evidence on which the ALJ relied for his RFC assessment, including the objective medical evidence and plaintiff's testimony. (*See* AR at 20-21.)  Considering this evidence, the ALJ found that plaintiff experienced moderate pain, which limited him to "work which requires a low stress routine" and that limited his ability to "perform[] activities within a schedule and maintain[] regular attendance for reliability purposes and [to] be[] punctual," as well as his ability to "complete[] a normal work day or workweek without an unreasonable length and number of rest periods." (AR at 20.)  Thus, the ALJ found that due to pain, plaintiff could only perform a limited range of light or alternatively sedentary work. (AR at 20, 24.)  In arriving at this conclusion, the ALJ complied with the SSA's two-step procedure for determining whether plaintiff was disabled by pain, including an appropriate consideration of plaintiff's subjective complaints.

### C.    The ALJ Adequately Developed the Administrative Record

Plaintiff's third and final basis for reversal of the SSA's decision is that the ALJ failed to adequately develop the administrative record. (Pl.'s Mem. Supp. Reversal at 12-16.)  In particular, plaintiff alleges that the ALJ erred by failing (1) to obtain medical records from a Dr. Osei at Howard University Hospital; (2) to recontact Dr. Dennis for additional evidence; and (3) to order a consultative examination of plaintiff. (*Id.*)  None of these arguments has merit.

"[A]n administrative law judge has the affirmative duty to investigate fully all matters at issue and to develop the comprehensive record requisite for a fair determination of disability." *Poulin v. Bowen*, 817 F.2d 865, 870 (D.C. Cir. 1987) (citations omitted).  The ALJ complied

with this duty. In his disability report completed in connection with his request for an administrative hearing, plaintiff indicated that he had commenced receiving epidural steroid block treatment from Dr. Osei in April 2005. (AR at 102.) The record reveals that the ALJ received medical records from Howard University Hospital after the date of the hearing but prior to the issuance of his decision.[13] (AR at 195-203, 205-06.) This evidence is consistent with plaintiff's assertion that he had commenced epidural steroid block treatment, but it provides no additional information that would materially affect the ALJ's decision. Moreover, the ALJ elicited testimony from plaintiff about his epidural treatments during the hearing and was told that the treatments provided some temporary pain relief. (AR at 264.) Accordingly, the ALJ obtained adequate information about these treatments to enable him to make a fair assessment of plaintiff's condition, and failure to obtain additional, cumulative evidence did not prejudice plaintiff. *See Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) (noting that "reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").

Plaintiff's argument that the ALJ erred by failing to recontact Dr. Dennis is equally without merit. Plaintiff contends that (1) Dr. Dennis' opinion was inadequate to determine whether plaintiff was disabled because the ALJ determined that the opinion was contrary to the evidence as a whole and (2) Dr. Dennis' reports contained an ambiguity that needed to be

---

[13] In addition, subsequent to the ALJ's decision but prior to the decision of the Appeals Council, the SSA received an October 2006 letter from a physician in Howard University Hospital's Department of Anesthesiology to a Dr. Hampton stating that plaintiff had been diagnosed with lumbar degenerative disc disease, osteoarthritis of the knees, and lumbar facet arthropathy and was undergoing lumbar facet point and epidural steroid injections. The letter indicates that plaintiff "responded with varying degrees of relief, more with the epidural than facet point injections." (AR at 246.) In recognition that the epidurals were providing some pain relief, the letter also included a recommendation that plaintiff undergo further injections. (AR at 246.) The Appeals Council properly determined that the evidence did "not provide any additional clinical or laboratory findings which would warrant a change in the Administrative Law Judge's decision." (AR at 7.)

resolved.  (Pl.'s Mem. Supp. Reversal at 14.)  However, the duty to recontact a treating source arises only when the evidence as a whole is inadequate to determine disability.  20 C.F.R. §§ 404.1512(e), 416.912(e); *see also id.* §§ 404.1527(c)(2), 416.927(c)(2).  Where the majority of the objective evidence in the record shows normal findings and other physicians have not found plaintiff unable to work, a single, unsupported finding does not establish a need for additional evidence.  Likewise, disagreement between the physician's objective findings and his conclusion that plaintiff was 100 percent disabled does not constitute an ambiguity.

Finally, plaintiff's argument that the ALJ erred by failing to order a consultative examination must be rejected.  Pursuant to SSA regulations, a consultative examination is necessary when the information needed by the ALJ to adjudicate a claim is not readily available from treating source records.  20 C.F.R. §§ 404.1512(f), 416.912(f).  Here, plaintiff contends that the ALJ "obviously felt that the evidence regarding the Plaintiff's back impairment was insufficient" and that "a consultative examination was necessary to determine the severity of the Plaintiff's back condition."  (Pl.'s Mem. Supp. Reversal at 15-16.)  There is nothing to suggest, however, that the ALJ thought the evidence was insufficient.  In fact, the ALJ expressly determined that plaintiff's impairment was "severe."  The mere fact that he found that evidence of plaintiff's ability to perform some work outweighed the evidence of disability does not suggest that the evidence was insufficient.  The evidence merely failed to provide substantial support for plaintiff's claims.

**CONCLUSION**

The SSA's determination that plaintiff was not disabled because he retained the RFC to perform a significant range of work that exists in significant numbers in the national economy is supported by substantial evidence.  The ALJ properly identified the record evidence supporting

his decision and adequately explained his reasons for rejecting an opinion of one of plaintiff's treating physicians.  Furthermore, the ALJ properly evaluated plaintiff's subjective complaints of pain, having conducted his assessment in light of the entire record.  Finally, the ALJ adequately developed the record, having obtained sufficient evidence to make a fair determination.  Therefore, the Court will deny plaintiff's motion for reversal and grant defendant's motion for affirmance.  A separate Order accompanies this Memorandum Opinion.

_____/s/_____<br>
ELLEN SEGAL HUVELLE<br>
United States District Judge

Date: February 21, 2008